IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| FERRIS MFG. CORP., | ) |
| | ) |
| Plaintiff, | ) Case No. 07 C 466 |
| v. | ) |
| | ) Judge Virginia M. Kendall |
| S.P.R.D., TH TRADING, INC., and MDR SPECIALTY DISTRIBUTION CO., | ) |
| | ) |
| Defendants. | ) |

MEMORANDUM OPINION AND ORDER

Ferris Mfg. Corp. ("Ferris") has brought suit against S.P.R.D., TH Trading, Inc., and MDR Specialty Distribution Co. ("MDR") for conspiracy to commit fraud.[1] MDR moves to dismiss for lack of personal jurisdiction pursuant to Federal Rule of Civil Procedure 12(b)(2). Because Ferris has not made a *prima facie* case that this Court may exercise personal jurisdiction over MDR, MDR's Motion to Dismiss is granted.

Facts

When reviewing a motion to dismiss for lack of personal jurisdiction, the Court accepts all well-pleaded factual allegations in the complaint as true unless controverted by the defendant's affidavits. *See Turnock v. Cope*, 816 F.2d 332, 333 (7th Cir. 1987), *superceded on other grounds*. Where affidavits submitted by the plaintiff create a factual dispute, all disputed facts are construed in the plaintiff's favor. *Logan Prods., Inc. v. Optibase, Inc.*, 103 F.3d 49, 52 (7th Cir. 1996).

Ferris, an Illinois corporation, manufactures wound dressings and related medical supplies. S.P.R.D., an Australian company, approached Ferris about discount pricing for supplies that

---

[1] Ferris brought several other claims against S.P.R.D. individually. S.P.R.D. has answered the Complaint.

S.P.R.D. claimed would be sold to aid organizations involved in helping victims of natural disasters in the South Pacific. On the basis of S.P.R.D.'s representations, Ferris agreed to sell supplies for the natural disaster victims to S.P.R.D. at a substantial discount.

On July 11, 2006, MDR placed an order to purchase Ferris products through Kramer Scientific ("Kramer"), located in New Jersey. *See* Def. Ex. C&E. Kramer is not a defendant in this case. MDR is a Virginia corporation with its principal place of business in Virginia. MDR does not own property in Illinois, is not licensed to do business in Illinois, and does less than three percent of its total sales in Illinois. MDR Ex. A. MDR has only one part-time employee in Illinois, a data processor hired in November 2006. MDR has never entered into any contracts with Ferris, S.P.R.D., or TH Trading, Inc. MDR Ex. B.

Around July 11, S.P.R.D. placed an order with Ferris for wound dressings and represented that the supplies would go to aid disaster victims. On August 21, 2006, Ferris delivered the products to Phoenix International Freight Services in Itasca, Illinois. On September 5, 2006, MDR received a shipment of Ferris products at its warehouse in Williamsburg, Virginia. MDR's employee testified that the shipment received on September 5 was the order MDR placed with Kramer. Def. Ex. B. at ¶ 4, 6.

Around October 6, 2006, MDR placed a second order for Ferris products with Kramer. Around the same time, S.P.R.D. placed a second order with Ferris for wound dressings for use by the agencies affiliated with the World Health Organization. Ferris delivered the second shipment to the same freight facility in Itasca, Illinois. On October 31, MDR accepted a second shipment in Virginia, sent from Kramer's offices in New Jersey. When MDR received a second shipment in Virginia, it rejected the shipment because the Ferris labels had been stripped off.

2

Standard of Review

Once a defendant challenges the court's exercise of personal jurisdiction, the plaintiff bears the burden of demonstrating that personal jurisdiction exists. *See Jennings v. AC Hydraulic A/S*, 383 546, 548 (7th Cir. 2004). When a court decides a motion solely on the written submissions, the plaintiff bears the burden to establish a *prima facie* case that jurisdiction may be exercised. *See Purdue Research Foundation v. Sanofi-Synthelabo, S.A.*, 338 F.3d 773, 782 (7th Cir. 2003). The Court first reviews whether statutory grounds exist for personal jurisdiction, and then determines if the exercise of jurisdiction would be consistent state and federal constitutional law. *See Central States, Southeast and Southwest Areas Pension Fund v. Reimer Express World Corp.*, 230 F.3d 934, 939 (7th Cir. 2000). A federal court sitting in diversity has personal jurisdiction over a defendant only if the courts of the state in which it sits would have personal jurisdiction. *See RAR, Inc. v. Turner Diesel, Ltd.*, 107 F.3d 1272, 1275 (7th Cir. 1997).

"A federal court borrowing a state jurisdictional statute may acquire personal jurisdiction only to the extent that the state law authorizes service of process." *Hyatt Int'l Corp. v. Coco*, 302 F.3d 707, 713 (7th Cir. 2002). The Illinois long-arm statute governs service of process in Illinois and "permits its courts to exercise jurisdiction on any basis permitted by the Illinois and United States constitutions." *See* 735 ILCS 5/2-209(c); *Hyatt*, 302 F.3d at 714. Due process requirements for jurisdiction under the Illinois Constitution parallel due process requirements for jurisdiction under the federal Constitution; therefore, the inquiry collapses into whether the exercise of

3

jurisdiction over MDR would comport with the due process requirements of the federal Constitution.² *See Central States*, 230 F.3d at 940; *accord Hyatt*, 302 F.3d at 714-16.

To satisfy the requirements of due process, a defendant must have "minimum contacts" with Illinois and those minimum contacts must not offend "traditional notions of fair play and substantial justice." *See RAR*, 107 F.3d at 1275, *discussing International Shoe Co. v. Washington*, 326 U.S. 310, 316 (1945). There exist two types of jurisdiction: "general" and "specific." *See Hyatt*, 302 F.3d at 713, *discussing Helicopteros Nationales de Colombia v. Hall*, 466 U.S. 408, 414 (1984). "General jurisdiction is proper only when the defendant has 'continuous and systematic' contacts with the state in question; if such contacts exist, the court may exercise personal jurisdiction over the defendant even in cases that do not arise out of and are not related to the defendant's forum contacts." *Hyatt*, 3102 F.3d at 713. Specific jurisdiction allows the Court to exercise jurisdiction over a defendant whose contacts with the forum state are limited but where "the plaintiff's cause of action must arise out of or be related to these minimum contacts that sufficiently comport with fairness and justice." *Central States*, 230 F.3d at 943.

### General Jurisdiction

MDR does not have 'continuous and systematic' contacts with the state of Illinois to permit this Court to exercise general jurisdiction over MDR. "The continuous and systematic contacts standard under general jurisdiction is 'considerably more stringent' than the minimum contacts

---

² The Seventh Circuit has noted that the Illinois Supreme Court acknowledged the possibility that there might be some instances in which the due process limitations of the Illinois constitution and the United States Constitution might diverge. *See Hyatt Int'l Corp. v. Coco*, 302 F.3d 707, 715 (7th Cir. 2002) *discussing Rollins v. Ellwood*, 565 N.E.2d 1302 (1990). No post-*Rollins* case has found that the Illinois limits prohibited jurisdiction where federal due process would have permitted it; therefore, *Hyatt* and other Seventh Circuit cases have affirmed that "there is no operative difference between the limits imposed by the Illinois Constitution and the federal limitations on personal jurisdiction" and the two due process requirements may be evaluated under the federal standard. *Hyatt*, 302 F.3d at 715 (listing cases); *accord Gencor Pacific, Inc. v. Nature's Thyme, LLC*, 2007 WL 1225362 (N.D. Ill. Apr. 24, 2007).

standard under specific jurisdiction." *Winston v. Martinair, Inc.*, 2007 WL 684113 (N.D. Ill.) *citing Purdue Research Foundation,* 338 F.3d at 787. Factors that courts examine in determining general jurisdiction include: (i) whether and to what extent the defendant conducts business in the state; (ii) whether the defendant maintains offices in the state; (iii) whether the defendant maintains employees in the state; (iv) whether the defendant advertises or solicits business from the forum state; and (v) whether the defendant has a designated agent for service of process. *See Helicopteros*, 466 U.S. at 416; *accord Interlease Aviation Investors v. Vanguard Airlines, Inc.*, 262 F. Supp. 2d 898, 906-07 (N.D. Ill. 2003).

The first factor, amount and nature of sales, weighs slightly against exercising jurisdiction over MDR because only three percent of MDR's $10 million of sales in 2006 occurred in Illinois. *See* Def. Ex. A, Toms Aff. *See McGill v. Gigantex Technologies Co., Ltd.,* 2005 WL 3436403, *3 (N.D. Ill.) (sales less than four percent in previous year not sufficient to confer general jurisdiction); *accord Hot Wax Inc. v. Stone Soap Inc*, 1999 WL 183776 (N.D. Ill.) (small sales amounts insufficient without evidence of direct advertisement). The remaining four factors all weigh strongly against exercising general jurisdiction. It is undisputed that MDR does not have property or an office in Illinois and is not licensed to do business in Illinois. MDR does not advertise in Illinois. MDR has one part-time employee in Illinois, a data processor hired after the events at issue in this case. The employee was hired in November 2006, had no connection to the events in this suit (which took place prior to her employment), and is currently on medical leave. MDR does not maintain an agent for service in Illinois. MDR's contacts with Illinois are insufficient to be considered "systematic and continuous" for the exercise of general jurisdiction.

Specific Jurisdiction

In determining whether specific jurisdiction exists over an out-of-state defendant, the Court must determine whether the minimum contacts between the defendant and the forum state mean that the defendant "purposefully availed itself of the privilege of conducting activities" in the forum state such that it "should reasonably anticipate being haled into court there." *See RAR, Inc.*, 107 F.3d at 1277. The court focuses on "the relationship among the defendant, the forum, and the litigation." *Heritage House Restaurants, Inc. v. Continental Funding Group, Inc.*, 906 F.2d 276, 283 (7th Cir. 1990). Specific jurisdiction exists if it is foreseeable that the contacts with the forum state would be sufficient for the defendant "to reasonably anticipate being haled into court there." *See Burger King v. Rudzewicz*, 471 U.S. 462, 472 (1985) (internal citations omitted).

It is undisputed that MDR had no contractual relationship with Ferris to ship the products at issue. It is also undisputed that MDR never communicated with Ferris prior to a call from Ferris' attorneys in November 2006, after both shipments had reached Virginia and after MDR had rejected the second shipment. Since it is undisputed that no direct contractual relationship existed between the parties, Ferris relies upon the tortious "effects doctrine" to assert that MDR should be haled into Court in Illinois because the economic effects of MDR's allegedly tortious actions, in concert with the other defendants, were felt in Illinois. Ferris cites *International Molding Machine Co. v. St. Louis Conveyor Co.*, 2002 WL 1838130 (N.D. Ill. 2002), which derived its economic "effects doctrine" analysis from *Calder v. Jones,* 465 US. 783, 789-90 (1984). The "effects doctrine" allows a court to exercise personal jurisdiction over a foreign defendant when the defendant aims intentional tortious actions at a plaintiff residing in the forum state with the knowledge that the plaintiff will suffer harm in the forum state. *Int'l Molding*, 2002 WL 1838130 at *4. Ferris also cites to the

6

specific "tortious act" provision of the Illinois long-arm statute, 735 ILCS 5/2-209(b), that parallels the Supreme Court's effects doctrine set forth in *Calder*. *Compare Heritage House*, 906 F.2d at 282-83; 735 ILCS 5/2-209(a)(2).

Like the plaintiff in *International Molding*, Ferris alleges solely economic damage from MDR's allegedly tortious conduct. But the contacts supporting the exercise of jurisdiction in *International Molding* are distinguishable from the facts present in this case. In *International Molding*, the plaintiff accused an out-of-state defendant of misappropriation of trade secrets, the effects of which were felt by the plaintiff in its home state of Illinois. Although the defendant committed the tortious misappropriation outside of Illinois, the plaintiff alleged that the defendant obtained the trade secrets as a result of previous contractual relationships between the parties in Illinois. The Court found that the out-of-state defendant would not have accessed the trade secrets but for prior contractual relationships between the parties, the formation and performance of which occurred in Illinois. Therefore, the *International Molding* court found that the action "arose out of" the defendant's contacts with the Illinois forum and that the defendant had "purposefully availed itself" of the laws of Illinois when it engaged in prior dealings with the plaintiff.

In this case, by contrast, it is undisputed that Ferris and MDR have never contracted with one another and have no prior relationship to one another. The only instances of contact between the parties are the shipments, and it is undisputed that MDR made all purchases through a New Jersey intermediary (if not more intermediaries) and accepted all deliveries of Ferris product at MDR's own Virginia headquarters without Ferris' involvement. The only possible connection to Illinois suggested by Ferris is a shipping label on the first shipment, shipped by Roadway Services, Inc. in Elgin, Illinois, stating that the shipment was to "MDR Specialty c/o Roadway." This shipping label,

claims Ferris, is sufficient to establish that MDR purposefully availed itself of the laws of Illinois such that it is foreseeable that MDR could be haled into court there.

Even under the "effects doctrine" as set forth in *Calder*, from which *International Molding* applied the test, a court must still assess each defendant's contacts with the forum state. *See Calder*, 465 U.S. at 790. Contacts that are "random, fortuitous or attenuated" are insufficient to establish minimum contacts. *See Heritage House*, 906 F.2d at 283. Ferris does not dispute that MDR accepted delivery in Virginia and paid Kramer for the items solely upon receipt. The fact that Roadway Services identified the shipment by placing "MDR Specialty c/o" on the shipment is not sufficient to establish that MDR purposefully availed itself of the laws of the forum state, especially in light of Ferris' own allegation that the shipments "were diverted to TH Trading and eventually to MDR," undermining its own claim that a shipping label bearing MDR's name evidences contact with the Illinois forum. Cmplt. at ¶ 16.

Without the shipping label, the only connection in this suit between MDR and Illinois is via a conspiracy theory involving two intermediate out-of-state companies, at least one of whom has not been sued, the goal of which was economic harm to Ferris. In order to proceed under the effects doctrine when the harm is purely economic, the plaintiff must also establish that the defendant's actions indicate "an intent to affect Illinois interests." *See Heritage House*, 906 F.2d at 282, *accord* 735 ILCS 5/2-209(a)(2). Ferris relies upon *Heritage House* and *Kalata v. Healy*, 728 N.E.2d 648 (Ill. App. Ct. 2000) to support its position that participation in a conspiracy is sufficient to show intent to affect Illinois interests. But in *Heritage House* and in *Kalata*, unlike the facts here, an out-of-state defendant participating in a scheme to defraud an Illinois plaintiff made telephone calls to the Illinois plaintiff in Illinois in order to make material misrepresentations in furtherance of the

alleged scheme against the Illinois plaintiff. Here, by contrast, it is undisputed that MDR had no contact whatsoever with Ferris. While the allegations against the other defendant S.P.R.D. involve contacts between those S.P.R.D. and Ferris that Ferris alleges contained misrepresentations, Ferris presents no evidence that it had any relationship with MDR at all. Beyond the general assertion that MDR participated in a broader undefined scheme, Ferris has not demonstrated minimum contacts with Illinois to form the basis for specific jurisdiction.

## Conclusion

Because Ferris cannot make a *prima facie* showing that the Court has personal jurisdiction over Defendant MDR, MDR's Motion to Dismiss is granted.

So ordered.

_____
Virginia M. Kendall, United States District Judge
Northern District of Illinois

Date: May 15, 2007